UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
MARIE LORENZATO, Individually and on　　:
Behalf of All Others Similarly Situated,　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Plaintiff,　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　vs.　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
SUNOPTA INC., STEVEN BROMLEY and　　:
JOHN H. DIETRICH,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants.　　　:
　　　　　　　　　　　　　　　　　　　　:
———————————————————— x

Civil Action No.

**08 CV 1844**

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS

DEMAND FOR JURY TRIAL



RECEIVED
FEB 25 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by SunOpta Inc. ("SunOpta" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of SunOpta between January 4, 2007 to January 25, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(d).  As a foreign corporation, SunOpta may be sued in any District of the United States.  SunOpta has sufficient minimum contacts with the Southern District of New York because the Company does significant business in this District and its shares are traded on the NASDAQ National Market ("NASDAQ").

5.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.    Plaintiff Marie Lorenzato, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of SunOpta at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant SunOpta primarily specializes in the natural and organic food markets in the United States and Canada.  The Company maintains its headquarters in Brampton, Canada.

8.    (a)    Defendant Steven R. Bromley ("Bromley") is, and has been, President and Chief Executive Officer ("CEO") of SunOpta since February 1, 2007.

(b)    Defendant John H. Dietrich ("Dietrich") is, and was at all relevant times, Vice President and Chief Financial Officer ("CFO") of SunOpta.

(c)    Defendants Bromley and Dietrich are collectively referred to herein as the "Individual Defendants."

9.    During the Class Period, the Individual Defendants, as senior executive officers and/or directors of SunOpta, were privy to confidential and proprietary information concerning SunOpta, its operations, finances, financial condition and present and future business prospects.  The Individual Defendants also had access to material adverse non-public information concerning SunOpta, as discussed in detail below.  Because of their positions with SunOpta, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via

- 2 -

access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of SunOpta's business.

11.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ and governed by the federal

securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to SunOpta's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of SunOpta's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct which operated as a fraud or deceit on purchasers of SunOpta's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding SunOpta's business, operations and management and the intrinsic value of SunOpta's securities; (ii) enabled the Company to complete an offering of 5,175,000 common shares thereby grossing $53.8 million in proceeds; (iii) enabled the Individual Defendants and other SunOpta insiders to sell $62 million of their personally held SunOpta common stock to the unsuspecting public and (iv) caused Plaintiff and members of the Class to purchase SunOpta's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of SunOpta between January 4, 2007 to January 25, 2008, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and

their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SunOpta common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SunOpta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of SunOpta;

- 5 -

(c)    whether the price of SunOpta common stock was artificially inflated during the Class Period; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### SUBSTANTIVE ALLEGATIONS

20.    Defendant SunOpta describes itself as an "operator of high-growth ethical businesses, focusing on integrated business models in the natural and organic food, supplements and health and beauty markets." The Company operates through three business segments: the SunOpta Food Group, the Opta Minerals Group and the SunOpta BioProcess Group.

21.    The Class Period begins on January 4, 2007. On that date, SunOpta issued a press release announcing its financial guidance for the calendar year 2007. In that regard, the press release stated:

> Revenue is expected to be in the range of $740 - $760 million U.S. an increase of approximately 25% over projected 2006 results and prior to any acquisitions. SunOpta intends to continue its current acquisition program which has added $100 - $125 million in annual revenue each year over the last several years.
>
> ***Net profit per diluted common share, prior to any acquisitions, is expected to be in the range of $0.35 - $0.40 per share in 2007*** reflecting continued growth, further leverage in selling, general and administration costs, and

improved margins resulting from product mix, cost reduction projects including automation and high plant utilization. [Emphasis added.]

22.     Upon this news, shares of the Company's stock rose 7% over the next three trading days to close at $9.07 per share on January 8, 2007.

23.     On February 13, 2007, the Company issued a press release announcing the completion of a $53.8 million public offering of 5,175,000 common shares at a price of $10.40 per share.

24.     On February 22, 2007, the Company issued a press release announcing its financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006. For the quarter, the Company reported "record" revenues of $163.5 million and net earnings of $2.08 million, or $0.04 per diluted common share. Defendant Bromley commented on the results, stating, in pertinent part, as follows:

> Clearly 2006 was a year of significant improvements in many of our businesses including an internal growth rate within the range of 15 to 20% which we strive to achieve plus the addition of six strategic acquisitions which are all off to great starts in their first year. We have made a number of inroads on improving profitability as we leverage our assets, capital investments, IT infrastructure and selling, general and administrative platform. Unfortunately, these improvements were tempered by the results of our Sunflower business and the expense in dealing with our recall costs. We are confident however that these incidents are behind us and in dealing with them we have strengthened our organization including our risk management procedures and quality programs. *We look forward to an exciting and profitable 2007.* [Emphasis added.]

With regard to the Company's guidance, the press release stated:

> SunOpta has confirmed revenue guidance for 2007 of $740 to $760 million and earnings guidance of $0.35 to $0.40 per diluted common share reflecting continued growth, further leverage in selling, general and administration costs and improved margins resulting from product mix, cost reductions including automation projects and a focus on higher plant utilization. This guidance reflects an approximate increase in revenues of 25% and approximately 100% in net earnings per share.

- 7 -

The Company remains well positioned for future growth, augmented by the post year end equity financing which raised gross proceeds of $53.8 million, leaving the Company with a long term debt to equity ratio of approximately 0.33:1.00 and providing financial resources to grow the Company through a combination of internal growth and strategic acquisitions for the next several years. The Company had total assets at December 31, 2006 of $404,730,000 and net book value of $3.06 per share. [Emphasis added.]

25.    In response to the Company's earnings announcement, the price of SunOpta common stock rose 11.5%, to close at $11.68 per share on the following trade day, on heavy trading volume.

26.    On May 8, 2007, the Company issued a press release announcing its financial results for the first quarter of 2007, the period ended March 31, 2007. For the quarter, the Company reported "record" revenues of $183.4 million and net earnings of $3.85 million, or $0.063 per diluted common share. Defendant Bromley commented on the announcement, stating, in pertinent part, as follows:

> We are very pleased with our first quarter results, driven by solid internal growth of over 20% within our vertically integrated food operations. These earnings are consistent with our expectations for the first quarter and *we are pleased to reconfirm our annual revenue guidance of $740 to $760 million and net earnings guidance of $0.35 to $0.40 per share.* We are confident that there is ample opportunity to drive bottom line growth and we have implemented a number of operational improvements and cost cutting initiatives which are expected to improve margins going forward. *Fiscal 2007 is off to a good start and we are most excited by our internal growth, acquisition and profit improvement opportunities.* [Emphasis added.]

27.    On August 8, 2007, the Company issued a press release announcing "record" results for the second quarter of 2007, the period ended June 30, 2007. For the quarter, the Company reported revenues of $207.9 million and net earnings of $10.6 million, or $0.17 per diluted common share. Moreover, the Company increased its revenue guidance and confirmed their net earnings guidance. Defendant Bromley commented on the results, stating, in pertinent part, as follows:

We are very pleased with our second quarter results, driven by solid internal growth of over 19% within our vertically integrated food operations. These earnings are consistent with our expectations for the second quarter and reflect our continued dedication to the growth of our business, both top line and bottom line. ***Based on these results, we are pleased to increase our annual revenue guidance to $775 to $800 million and confirm our net earnings guidance of $0.35 to $0.40 per share, including the dilutive impact of the additional shares issued during the first quarter.*** [Emphasis added.]

28.     In response to the Company's earnings announcement, the price of SunOpta common stock rose 8%, to close at $13.26 per share, on heavy trading volume.

29.     On November 6, 2007, the Company issued a press release announcing "record" results for the third quarter of 2007, period ended September 30, 2007. For the quarter, the Company reported revenues of $205.7 million and net earnings of $5.1 million, or $0.08 per diluted common share. Moreover, the Company reconfirmed its revenue and earnings guidance. Defendant Bromley commented on the results, stating, in pertinent part, as follows:

We are quite pleased with our third quarter results, driven by solid internal growth of over 20% in the quarter. We continue to see strong growth prospects within each of our operating segments and are positioning the Company to realize these opportunities. Last year we stated that our sunflower business would see a turnaround of $4,000,000 year over year and we are pleased to report that these results have actually increased by over $5,000,000 after just nine months. We expect that the significant investments being made within our healthy fruit snack business and SunOpta BioProcess Inc., which have impacted the third quarter operating results, are a wise investment for the long-term and will provide excellent returns. ***Based on our results to date, we are pleased to reconfirm our revenue guidance of $775,000,000 to $800,000,000 for fiscal 2007 as well as confirm our net earnings guidance in the range of $0.35 to $0.40 per share***, albeit at the lower end of the range, after absorbing the previously mentioned investment spending in our fruit snack operations and SunOpta BioProcess Inc. [Emphasis added.]

30.     On December 7, 2007, Stephen R. Bronfman, a member of the Company's Board of Directors, along with two of his related entities, completed a secondary offering of

- 9 -

5,080,532 common shares of SunOpta at a price of $13.20 per share for gross proceeds of approximately $67.1 million.

31.    As detailed further herein, on December 13, 2007 and December 14, 2007, the Individual Defendants and other SunOpta insiders took advantage of the artificial inflation caused by their material misstatements and sold 51,250 shares of SunOpta stock generating proceeds of more than $650,000.

32.    The statements referenced above in ¶¶21, 24, 26, 27 and 29 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)    that the Company's financial results were materially overstated because SunOpta failed to timely record an impairment in the value of its berry inventory. Indeed, SunOpta has publicly announced that it would be restating its previously issued financial results for 2007 to correct for the over-valuation of its berry inventory.

(b)    that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and

(c)    as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and earnings growth.

33.    Then, on January 24, 2008, the Company issued a press release announcing that it was lowering its 2007 earnings guidance and that financial restatements were likely. With regard to the Company's outlook, the press release stated:

> For fiscal 2007, the Company is expected to realize revenues of slightly over $800 million, exceeding previously provided revenue guidance of $775 to $800 million, an increase of approximately 34% versus 2006. These revenues are reflective of the continued strong demand in the Company's core natural and organic foods business.

*Earnings for the year are expected to be in the range of $0.12 to $0.14 per diluted common share and have been impacted by significant issues within the SunOpta Fruit and SunOpta BioProcess Groups which have led to significant write downs and provisions in the range of $12 to $14 million pre-tax. The Company is currently analyzing the impact of the adjustments related to the SunOpta Fruit Group berry operations, including the potential impact on previously issued fiscal 2007 financial statements which will likely result in the restatement of previous quarters.*

*The Company has determined that inventories within the SunOpta Fruit Group's berry operations require write-down to net realizable value and preliminary estimates indicate that an adjustment in the range of $9 to $11 million for this issue and related items is necessary. Upon becoming aware of this issue, the Company has initiated a number of immediate and specific actions including engagement of an independent third party by the Company's audit committee to assess internal controls and processes, and implementation of a series of specific pricing and cost related actions to address potential causes of this issue.* The Company's testing and analysis is ongoing and there can be no assurance that further adjustments will not be required.

*Included in the updated earnings estimate for the year is a provision of approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group.* The Company also has knowledge that the customer's US affiliate is in violation of a Technical Development Agreement which delineates the intellectual property of each of the parties. As a result of failed discussions to resolve these issues, the Company has taken legal action to protect its intellectual property and recover costs, and thus feels it is necessary to reserve for uncollected amounts.

The balance of the Company's core food group operations performed extremely well throughout the year. The SunOpta Grains and Foods Group, SunOpta Ingredients Group, SunOpta Distribution Group and global sourcing operations within the SunOpta Fruit Group all reported strong results, well ahead of the prior year. Opta Minerals Inc. continues to perform well but has been somewhat impacted by cyclical weak economic conditions which are impacting the steel and foundry industries. Even with the tough economic conditions, the business is expected to realize earnings in the same range as the prior year. SunOpta BioProcess continued to invest in expansion of its operations throughout the year and in doing so is now well positioned for the future.

Given the issues within the SunOpta Fruit Group's berry operations, the Company has decided to fully assess the short and long term impact of the root causes behind the issues identified before providing 2008 revenue and

- 11 -

earnings guidance. This analysis is currently ongoing. The Company remains very confident in its strategic positioning and the outlook for the business, but believes it is most prudent to complete this analysis in order to ensure that the guidance provided is as accurate as possible.

The Company also provided an update on the previously announced intention to acquire Tradin Organics, and confirmed that due diligence and related documentation has essentially been completed; however, the closing will be delayed pending resolution of these issues and final approval from the Company's lenders. [Emphasis added.]

34.    In response to this announcement, on the next trading day, shares of the Company stock fell $3.51 per share, or 37%, to close at $6.05 per share, on extremely heavy trading volume.

35.    The markets for SunOpta common stock were open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, SunOpta's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SunOpta's common stock relying upon the integrity of the market price of SunOpta's common stock and market information relating to SunOpta, and have been damaged thereby.

36.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of SunOpta's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

37.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial

contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about SunOpta's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of SunOpta and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

38.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding SunOpta, their control over, and/or receipt and/or modification of SunOpta's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunOpta, participated in the fraudulent scheme alleged herein.

39.    Defendants were further motivated to engage in this course of conduct in order to allow the Individual Defendants and other Company insiders to sell 4,710,750

shares of their personally-held SunOpta common stock for gross proceeds in excess of $62 million. The following chart sets forth the insider trading:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| STEVEN BROMLEY | 12/13/2007 | 3,250 | $13.03 | $42,348 |
| | 12/14/2007 | 8,000 | $13.00 | $104,000 |
| | 12/14/2007 | 2,600 | $12.98 | $33,748 |
| | 12/14/2007 | 2,000 | $12.90 | $25,800 |
| | 12/14/2007 | 2,000 | $12.95 | $25,900 |
| | 12/14/2007 | 1,900 | $12.94 | $24,586 |
| | 12/14/2007 | 300 | $12.93 | $3,879 |
| | 12/14/2007 | 100 | $12.91 | $1,291 |
| | 12/14/2007 | 100 | $12.92 | $1,292 |
| | | 20,250 | | $262,844 |
| | | | | |
| STEPHEN BRONFMAN | 12/7/2007 | 4,550,000 | $13.20 | $60,060,000 |
| | 12/14/2007 | 29,000 | $13.07 | $379,030 |
| | | 4,579,000 | | $60,439,030 |
| | | | | |
| BENJAMIN CHHIBA | 12/14/2007 | 2,000 | $13.00 | $26,000 |
| | | 2,000 | | $26,000 |
| | | | | |
| JOHN DIETRICH | 6/13/2007 | 8,500 | $11.15 | $94,775 |
| | | 8,500 | | $94,775 |
| | | | | |
| CYRIL ING | 8/20/2007 | 5,000 | $13.22 | $66,100 |
| | | 5,000 | | $66,100 |
| | | | | |
| ALLAN ROUTH | 6/13/2007 | 60,000 | $11.11 | $666,600 |
| | 8/27/2007 | 30,000 | $12.67 | $380,100 |
| | | 90,000 | | $1,046,700 |
| | | | | |
| SERGIO VARELA | 3/8/2007 | 3,509 | $11.02 | $38,669 |
| | 3/8/2007 | 1,191 | $11.05 | $13,161 |
| | 3/8/2007 | 1,000 | $11.06 | $11,060 |
| | 3/8/2007 | 300 | $11.04 | $3,312 |
| | | 6,000 | | $66,202 |
| | | | | |
| | Total: | 4,710,750 | | $62,001,650 |

## Loss Causation/Economic Loss

40.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of

SunOpta's common stock and operated as a fraud or deceit on Class Period purchasers of SunOpta's common stock by failing to timely record an impairment in the value of SunOpta Fruit Group's berry inventory. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of SunOpta's common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of SunOpta's common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

41.    Defendants' false and misleading statements had the intended effect and caused SunOpta's common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $15.19 per share on October 9, 2007.

42.    As a direct result of Defendants' disclosure on January 24, 2008, the price of SunOpta common stock fell precipitously. This drop removed the inflation from the price of SunOpta common stock, causing real economic loss to investors who had purchased SunOpta common stock during the Class Period.

43.    The decline in the price of SunOpta common stock after this disclosure came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in SunOpta common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of SunOpta common

stock and the subsequent significant decline in the value of SunOpta common stock when
Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

44.    At all relevant times, the market for SunOpta's common stock was an
efficient market for the following reasons, among others:

(a)    SunOpta common stock met the requirements for listing, and was
listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    as a regulated issuer, SunOpta filed periodic public reports with the
SEC and the NASDAQ;

(c)    SunOpta regularly communicated with public investors via established
market communication mechanisms, including regular disseminations of press releases on
the national circuits of major newswire services and other wide-ranging public disclosures,
such as communications with the financial press and other similar reporting services; and

(d)    SunOpta was followed by several securities analysts employed by
major brokerage firms who wrote reports which were distributed to the sales force and
certain customers of their respective brokerage firms. Each of these reports was publicly
available and entered the public marketplace.

45.    As a result of the foregoing, the market for SunOpta common stock promptly
digested current information regarding SunOpta from all publicly available sources and
reflected such information in the prices of the stock. Under these circumstances, all
purchasers of SunOpta common stock during the Class Period suffered similar injury through
their purchase of SunOpta common stock at artificially inflated prices and a presumption of
reliance applies.

**No Safe Harbor**

46.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SunOpta who knew that those statements were false when made.

**COUNT I**

**Violation of Section 10(b) of
the Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

- 17 -

49.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

50.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SunOpta common stock. Plaintiff and the Class would not have purchased SunOpta common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of SunOpta common stock during the Class Period.

**COUNT II**

**Violation of Section 20(a) of
the Exchange Act Against the Individual Defendants**

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    The Individual Defendants acted as controlling persons of SunOpta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of SunOpta, and their ownership of SunOpta stock, the Individual Defendants had the power and authority to cause SunOpta to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: February 25, 2008          COUGHLIN STOIA GELLER
                                    RUDMAN & ROBBINS LLP
                                  SAMUEL H. RUDMAN
                                  DAVID A. ROSENFELD
                                  MARIO ALBA, JR.


                                  SAMUEL H. RUDMAN

                                  58 South Service Road, Suite 200
                                  Melville, NY 11747
                                  Telephone: 631/367-7100
                                  631/367-1173 (fax)

                                  Attorneys for Plaintiff

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

MARIE LORENZATO ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 5/30/06 | 736 | 600 @ 9.60  136 @ 9.59 |
| 7/12/06 | 459 | 9.82 |
| 11/05/07 | 375 | 13.74 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| none | | |
| | | |
| | | |

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of February, 2008.

_Marie Lorenzato_
MARIE LORENZATO

SUNOPTA